## J. T. CORSON V. THE STATE.

No. 23208. Delivered November 28, 1945.

The opinion states the case.

*Raldolph Pierson,* of Galveston, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of maiming, and by the jury assessed a penalty of two years in the penitentiary, and he appeals.

We take the following resume from the brief of our State's Attorney as fairly stating the facts, and legal conclusions therefrom:

"The statement of facts produced by the State reveals that appellant, who was a member of the U. S. Navy, and two companions, also Navy men, were in the town of Galveston on the night of the alleged offense. The record also reveals that they were to some extent under the influence of intoxicating liquor; that the three of them boarded a bus at 22nd Street and Post Office; that one W. C. Richards was the driver of the bus. He testified that when he left the 21st Street loading zone the three sailors were causing a disturbance; Corson and Read were using vulgar language but that the third sailor, Williams, was very nice and did not use any vulgar language. He further testified that at 18th Street he asked Corson and Reed to be quiet and that they called him '4-F s- of a b-'. He replied, 'It is true I am a 4-F but I am not a s-of a b-'; that Reed then wanted to jump on him but Corson wouldn't let him; that later Corson asked the driver for a match, which he gave him, and Corson in turn slapped him on the back and said, 'You are all right'; that when he reached 12th Street a lady, Miss Garcia, asked him if he wanted to call the Shore Patrol; he told her no, that they would be all right; and that Reed had asked him if the bus went to 8th and Broadway and stated they wanted to get out there, but when he arrived at 8th and Broadway he called out the number but the sailors did not get off; that by the time he had reached 8th and Broadway the sailors were the only ones on the bus, but there he picked up a Wave lieutenant. He further testified that before he had gone very far Corson spoke to Reed and said 'Now is your chance if you want to get up there and beat hell out of that 4-F s- of a b-'; that Reed came up behind him, jerked his cap over his eyes and pushed him; that he requested Reed to please not jerk his cap over his eyes because he couldn't see to drive the bus, but that Reed kept pulling or pushing his cap over his eyes. The driver further testified that he was afraid to say anything or afraid to stop for fear they would jump on him then, and that when he reached 21st Street, instead of continuing on to 22nd Street on his regular route, he turned right and pulled up in front of the bus barn to report there. He reported to Mr. Kaiser, an employee of the Galveston Electric Company, the owner and oper-

ator of the bus. Mr. Kaiser was employed in the capacity of bus inspector. Richards asked Kaiser to come outside, reporting that he had a little trouble with Corson and Reed. Kaiser testified that he went out and that Corson and Reed were standing on the outside of the bus; that Reed and Richards were having an argument and that he (Kaiser) tri~d to quiet them and get the sailors to go on their way; that Corson said, 'Get me all the 4-F s-s of b-s you want and we will take them all on.' Kaiser again asked him to go away, stating that they didn't want to have any trouble. About that time Richards and Reed engaged in a fight. Kaiser, in the meantime, was trying to persuade Corson to go on but he wouldn't, but broke away from Kaiser and went over and began kicking Richards. Kaiser again grabbed Corson by the arm and asked him to please go away, but he broke loose from him again and kicked Richards in the chin. Again Kaiser grabbed him by the arm and got him away and was talking to him when suddenly Corson hit Kaiser in the eye, breaking and knocking his glasses off. During this time both the Shore Patrol and the Police Department of the City of Galveston had been called. Kaiser further testified that he at no time hit or attempted to hit or fight Corson or Reed; that his job was to keep down trouble. He further testified that when Corson struck him in the right eye he knocked all the glass out of the oval into his eye, splitting his eye in half. At the time the officers arrived the sailors had disappeared but were later apprehended and arrested. Kaiser was carried to the hospital where he was operated, and his eye removed. He now has an artificial eye.

"Some of the witnesses who testified as to the acts and conduct of the sailors while on the bus differ in some minor respects as to just what happened, but as we view this record, those differences were immaterial in a determination of this case.

"Appellant testified that Kaiser struck him first. He does admit, however, that he struck Kaiser but without any intention of seriously injuring or maiming him. However, he did testify that he knew Kaiser was wearing glasses because he had previously observed that he had on glasses."

There are but two bills of exceptions in the record, both filed on May 22, 1945, the appellant's motion for a new trial having been overruled on March 23, 1945, and the term of court adjourning on March 31, 1945. We do not find any order of the court in the record granting any extension of time in which to file bills of exceptions, and we are therefore relegated to the 30 days allowed by Art. 760, C.C.P. It therefore appears that

the bills of exceptions herein present were filed too late. However we note therefrom that the argument complained of in bill No. 1 was immediately withdrawn from the jury, and also that bill No. 2 merely related to the insufficiency of the evidence to show malice or evil intent. It is contended in appellant's brief that the evidence merely shows possibly an aggravated assault, or simple assault, without the evidence of any willful or malicious intent, and this seems to be his sole contention.

In the case of Rankin v. State, 139 S. W. (2d) 812, the complaining witness was struck in the eye with a bottle, and the eye was destroyed. We quote therein as follows:

"In Keith v. State, 89 Tex. Cr. R. 264, 232 S. W. 321, 323, 16 A.L.R. 949, this court, speaking through Judge Lattimore, used language as follows: 'Appellant excepted to the court's failure to charge on the question of his intent and premeditated design. In the Davis Case, 22 Tex. App. 50, 2 S. W. 630, and the Key Case (Key v. State, 71 Tex. Cr. R. 642, 161 S. W. 121, L.R.A. 1916E, 492), supra, we held that if the maiming was actually committed, and was with evil intent and without justification, same would be punishable whether or not there was any specific intent or premeditated design to maim. In the instant case the trial court defined a willful act as one done with evil intent, and told the jury that malice denoted a wrongful act intentionally done without just cause or excuse. This we think sufficient upon the question of intent under the facts of this case. Bowers v. State, 24 Tex. App. (542) 549, 7 S. W. 247, 5 Am. St. Rep. 901; Pool v. State, 59 Tex. Cr. R. 482, 129 S. W. 1135; See, also, Key v. State, 71 Tex. Cr. R. 642, 161 S. W. 121, 122, L.R.A. 1916E, 492."

The State's testimony clearly shows that the complaining witness herein was wearing eye glasses, and appellant knew that he had on such glasses at the time he struck him in the eye. Appellant's contention was that the witness Kaiser swung at appellant, and appellant saw that the witness was wearing glasses, nevertheless he struck Mr. Kaiser in the eye and destroyed it, the glass shattering and cutting the eye in two, appellant claiming he didn't think about the glass in front of the eye at such time.

We held in Phillips v. State, 143 S. W. (2d) 591:

"Appellant offered no testimony whatsoever in defense of his action, nor any denial thereof. That the same was maliciously and willfully done could be inferred from his actions by the jury seems plain to us."

In this case Phillips was charged with throwing a rock through an automobile windshield and destroying the driver's eye.

We also held in the case of Davis v. State, 22 Tex. App. 45, 2 S. W. 630, as follows:

"It is insisted by counsel for the defendant that the word 'wilfully,' as used in this statute, means more than it has been held to mean in other cases; that it means not only that the act causing the injury was intentional, but that the party inflicting the injury intended the probable result of the act. In other words, that it means a specific intent on the part of the person inflicting the injury to maim the person injured, or that the person inflicting the injury must have known at the time that the means used by him was calculated to maim.

"If this had been a prosecution for an assault with intent to maim, the specific intention to maim would be essential, and it would have been error if the court had failed to so instruct the jury. But where, as in this case, the maiming was actually effected, if the act was committed with the evil intent, with legal malice, without reasonable ground for believing it to be lawful, and without legal justification, it was wilful and malicious, whether or not it was committed with a specific intent to maim. And if the means used in the commission of the offense were such as would, in the manner used, ordinarily result in maiming, the law presumes that the intention was to maim (Penal Code, Art. 50), without regard to the knowledge of the party using such means as to whether or not the same were calculated to maim."

We see no error presented herein, and the judgment is accordingly affirmed.