240

### FLAVIS G. BONDS v. STATE.

No. 24837. June 21, 1950.
Rehearing Denied November 1, 1950.
Request for Leave to File Second Motion for Rehearing Denied.
(Without Written Opinion) November 15, 1950.)

*C. R. Carpenter*, Lubbock, *Grady Hazelwood*, Amarillo, for appellant.

*George P. Blackburn*, State's Attorney, Austin, for the state.

GRAVES, Judge.

Appellant was convicted of knowingly passing as true a false and forged instrument, and he received a penalty of two years' confinement in the state penitentiary.

From the transcript, it is noted that, according to the caption, the term of court in which this trial was had began on the 2nd day of January, 1950, and will adjourn on the first day of July, 1950, thus continuing for more than eight weeks. Under Article 760, section 5, Vernon's C.C.P., the bills of exception must be filed within thirty days after final judgment shall be rendered unless the trial court, by its order entered of record, extends the time for filing such bills of exception. It appears from the record that the judgment herein was entered on January 24,

1950, and appellant was sentenced on said date. The record contains no order relative to an extension of time for the filing of the bills of exception, which are shown to have been filed on March 20, 1950, or 55 days after final judgment, which is too late to be considered by this court. See Teal v. State, 149 Tex. Cr. R. 93, 191 S.W. (2d) 684; Page v. State, 148 Tex. Cr. R. 473, 188 S.W. (2d) 181; Corson v. State, 148 Tex. Cr. R. 630, 190 S.W. (2d) 726; Gaddison v. State, 129 Tex. Cr. R. 659, 90 S. W. (2d) 256.

We think the facts are sufficient to show that appellant, with full knowledge of the intent, acted with the person passing a false and forged instrument; that he waited while such check was passed and kept watch and assisted in securing the safety and concealment of the person passing such instrument, and that he is guilty under the law of principals.

The judgment will therefore be affirmed.

### ON MOTION FOR REHEARING.

WOODLEY, Judge.

Appellant in his motion for rehearing, supported by the well prepared brief and argument of his able counsel, urges that we were in error in holding that the evidence was sufficient to sustain the conviction.

In the light of such motion we have again carefully examined the record.

The trial court in his charge submitted the law of circumstantial evidence and required the jury, in order to convict appellant, to find, beyond a reasonable doubt, that J. R. King made the forged instrument described in the indictment, that Jack R. Ross willingly, knowingly, and fraudulently passed it as true with intent to defraud, and that appellant knew it to be a forged instrument and acted as a principal with Ross in passing it in one of the ways set forth in the charge—namely (1) appellant being present, aided by acts, words or gestures in the passing of the instrument, or (2) though not present, appellant kept watch so as to prevent the interruption of Ross in such passing, or (3) though not present, appellant endeavored at the time to secure the safety or concealment of Ross.

The making of the forged instrument by King and its passing by Ross is established beyond dispute. It is upon the follow-

ing facts and circumstances that the state must rely to convict appellant as a principal with Ross in the passing:

King testified that he registered at Stoncipher's tourist courts on September 10, and got Cabin No. 4. He said that Ross and one Roberts were with him, and that the room was to be used for the purpose of storing merchandise and groceries which they intended to buy in passing some forty-five checks King had forged. King had a Ford car and, according to his testimony, neither Ross nor Roberts had a car. He denied that appellant was at the tourist court, and said that he had never seen appellant before the trial.

In exchange for the check in question, Ross received a box of 50 Y-B cigars, a four-pound bucket of lard, and the balance to total the amount of the check in cash. The lard bucket was described as a four-pound funnel-shaped white bucket with a blue lid.

The officers found in Cabin No. 4 at the tourist court an assortment of groceries, canned goods, meats, and other merchandise, including what the officer described as "a blue and white can of lard, I don't know how many pounds it weighs, I found a box of cigars, Y-B cigars out there and there was one cigar missing."

Mr. Stonecipher identified appellant as the party to whom he had rented Cabin No. 4, and said that he came to the place in a Pontiac tudor car with a New Mexico license on it. He was positive that appellant was one of the two men that stayed there at the cabin that night, the other being King, and that it was appellant and not King who signed the register. It is shown, however, that the witness had been a sick man for a good many years, and he said that he was "pretty forgetful." His testimony is directly contrary to that of the witness King who also testified for the state, in regard to appellant's identity and as to who signed this register. The register itself was offered in evidence, and also sample signatures by King of the same name for comparison by the jury. No expert testimony was offered.

Appellant, when arrested, was seated on the fender of the Pontiac car bearing a description similar to that given by Mr. Stonecipher and shown to be the same car which Ross entered upon leaving the store with the proceeds from the forged check he had just passed.

Appellant was the driver of the car, and drove Ross away

from the store. They were followed closely by Ben Hicks, one of the store men who had noted the license number of the car. He testified that they drove for some three quarters of a mile in one direction, stopped, then turned around and drove by the store again and continued to drive in that direction for some two miles.

The witness said that he stopped at the store while following the Pontiac and asked for assistance. He then continued the pursuit. When he next saw it, the Pontiac had turned again.

This witness and two others from the store who joined him finally drove up beside the Pontiac when appellant and Ross pulled in at a liquor store.

Harmon, one of the two occupants of the car which joined in the pursuit of the Pontiac, was described by the witness Ben Hicks as the one who did the talking when the three approached the Pontiac. The witness gave the following account of this event:

"He asked if one of these two was Ross, the man that was next to the driver was the one that answered to the name of Ross. He identified himself as Ross. We just told him we wanted our money back on it, Mr. Harmon did. He gave us our money back. They both gave us the money back, Ross didn't have enough so—the fellow under the driver's seat had to get him some money. I got a good look at that man that was driving the car, I was watching him. He is the man sitting at the table right there, the one in the center. That is the man that was driving.

"Ross started to pay us the money and he didn't have enough and he turned to this man right here and asked him for some money, this man Flavis Bonds and asked him for some more money, I was watching Mr. Bonds, he either reached down in his shoe or under the seat or under the floor boards and pulled out some money. He pulled out some money, I couldn't tell if it was a big handful of money or not it was wadded up, and he handed it to this man Ross, it was more than enough to pay for it. He didn't act excited about it at all. He handed the money to Ross and Ross counted it out to me. He started to count it out to Harmon and Harmon said 'No count it out to him.'

"He counted me out $51.42, and what I wanted back was $47.52. I did not give him back the overage. They still have the lard, I didn't get that back. This man right there is the one that

reached down there and got the money from out or under the seat."

Bill Hicks, the other occupant of the second pursuing car, testified:

"I saw this defendant produce some money from the floor board or underneath the front seat. He did not reach in his pocket like this and get his billfold out and drop some money down. He did not do that. That did not happen.

"* * * He had it in both hands cupped like this. The money was not folded up slick, it was wrinkled."

When appellant was arrested about 10:40 P.M. following the passing of the check, he had some $500 in bills on his person.

Appellant did not testify. He offered proof of his good reputation, and a witness testified that prior to the day in question appellant had a large amount of money in his pocket. One of appellant's witnesses said that appellant owned a Pontiac car fitting the description of the car described by the witnesses.

The credibility of the witnesses and the weight to be given their testimony was for the jury. We are unwilling to hold that from this testimony, the jury was unwarranted in believing that appellant knew of the unlawful purpose of Ross in the cashing of this forged check, and that appellant acted as a principal in such crime.

No other question is before us save appellant's contention that error was committed in the failure of the trial court to limit testimony as to other offenses committed by King. It is contended that such failure should be held to be reversible error, though no exception was reserved on the point.

Suffice it to say that the evidence referred to is as to offenses by the witness King and not by appellant, and the authorities cited by appellant have no application.

Appellant's motion for rehearing is overruled.

Opinion approved by the court.